UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| KIMBERLY LYNNE BATES, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 4:16-CV-01413 JAR |
| | ) |
| NANCY A. BERRYHILL,[1] | ) |
| ACTING COMMISSIONER OF SOCIAL | ) |
| SECURITY, | ) |
| | ) |
| Defendant. | ) |
| | ) |

**MEMORANDUM AND ORDER**

This is an action under 42 U.S.C. § 405(g) for judicial review of the Commissioner of Social Security's final decision denying Kimberly L. Bates's ("Bates") applications for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401, *et seq.*

**I. Background**

On April 5, 2013, Bates protectively filed an application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401, *et seq.*, alleging disability beginning January 21, 2010, due to "obesity; disorders of muscle, ligaments and fascia, and unspecified arthropathies of left arm; and asthma." (*See* Tr. 19.) After her application was denied at the initial administrative level, Bates requested a hearing before an administrative law judge ("ALJ"). A hearing was held on January 30, 2015. At the hearing, Bates amended her alleged

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill should be substituted for Acting Commissioner Carolyn W. Colvin as the defendant in this suit. No further action needs to be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

onset date to March 29, 2011. The ALJ issued a written decision denying Bates's application on June 16, 2015. On July 5, 2016, the Appeals Council of the Social Security Administration denied Bates's request for review. Thus, the decision of the ALJ stands as the final decision of the Commissioner. *See Sims v. Apfel*, 560 U.S. 103, 107 (2000).

Bates filed this appeal on September 1, 2016. (Doc. 1.) The Commissioner filed an Answer. (Doc. 10.) Thereafter, Bates filed a Brief in Support of her Complaint (Doc. 12), the Commissioner filed a Brief in Support of the Answer (Doc. 19), and Bates filed a Reply Brief (Doc. 20).

## II. Facts

The Court adopts Bates's Statement of Facts (Doc. 12-1) as supplemented by the Commissioner's Response to Bates's Statement of Facts (Doc. 19-1), and the Commissioner's Statement of Additional Facts (Doc. 19-2). The Court's review of the record shows that the adopted facts are accurate and complete. Specific facts will be discussed as part of the analysis.

## III. Standards

The Social Security Act defines as disabled a person who is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A); *see also Brantley v. Colvin*, 2013 WL 4007441, at *2 (E.D. Mo. Aug. 2, 2013). The impairment must be "of such severity that [the claimant] is not only unable to do his previous work but cannot, considering her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work

exists in the immediate area in which she lives, or whether a specific job vacancy exists for her, or whether she would be hired if she applied for work." 42 U.S.C. § 1382c(a)(3)(B).

Under the Social Security Act, the Commissioner has established a five-step process for determining whether a person is disabled. 20 C.F.R. §§ 416.920(a), 404.1520(a). "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (quoting *Eichelberger v. Barnhart*, 390 F.3d 584, 590-91 (8th Cir. 2004)). First, the claimant must not be engaged in "substantial gainful activity." 20 C.F.R. §§ 416.920(a), 404.1520(a). Second, the claimant must have a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 416.920(c), 404.1520(c). "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on [his or] her ability to work." *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting *Caviness v. Massanari*, 250 F.3d 603, 605 (8th Cir. 2001).

Third, the claimant must establish that his or her impairment meets or equals an impairment listed in the Regulations. 20 C.F.R. §§ 416.920(d), 404.1520(d). If the claimant has one of, or the medical equivalent of, these impairments, then the claimant is per se disabled without consideration of the claimant's age, education, or work history. *Id.*

Before considering step four, the ALJ must determine the claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e). RFC is defined as "the most a claimant can do despite [her] limitations." *Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir. 2009) (citing 20 C.F.R. § 404.1545(a)(1)). At step four, the ALJ determines whether the claimant can

return to her past relevant work, by comparing the claimant's RFC with the physical and mental demands of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f), 416.920(a)(4)(iv), 416.920(f); *McCoy v. Astrue*, 648 F.3d 605, 611 (8th Cir. 2011). If the claimant can still perform past relevant work, she will not be found to be disabled; if the claimant cannot, the analysis proceeds to the next step. *Id.*

At step five, the ALJ considers the claimant's RFC, age, education, and work experience to see if the claimant can make an adjustment to other work in the national economy. 20 C.F.R. §§ 416.920(a)(4)(v). If the claimant cannot make an adjustment to other work, then she will be found to be disabled. 20 C.F.R. §§ 416.920(a)(4)(v), 404.1520(a)(4)(v). Through step four, the burden remains with the claimant to prove that she is disabled. *Brantley*, 2013 WL 4007441, at *3 (citation omitted). At step five, the burden shifts to the Commissioner to establish that the claimant maintains the RFC to perform a significant number of jobs within the national economy. *Id.* "The ultimate burden of persuasion to prove disability, however, remains with the claimant." *Meyerpeter v. Astrue*, 902 F. Supp. 2d 1219, 1229 (E.D. Mo. 2012) (citations omitted).

The Court's role on judicial review is to determine whether the ALJ's findings are supported by substantial evidence in the record as a whole. *Pate–Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009). In determining whether the evidence is substantial, the Court considers evidence that both supports and detracts from the Commissioner's decision. *Andrews v. Colvin*, 791 F.3d 978, 983 (8th Cir. 2015); *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007). As long as substantial evidence supports the decision, the Court may not reverse it merely because substantial evidence exists in the record that would support a contrary outcome or because the

4

Court would have decided the case differently. *See Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002).

To determine whether the ALJ's final decision is supported by substantial evidence, the Court is required to review the administrative record as a whole and to consider:

    (1) The findings of credibility made by the ALJ;

    (2) The education, background, work history, and age of the claimant;

    (3) The medical evidence given by the claimant's treating physicians;

    (4) The subjective complaints of pain and description of the claimant's physical activity and impairment;

    (5) The corroboration by third parties of the claimant's physical impairment;

    (6) The testimony of vocational experts based upon prior hypothetical questions which fairly set forth the claimant's physical impairment; and

    (7) The testimony of consulting physicians.

*Brand v. Sec'y of Dept. of Health, Educ. & Welfare*, 623 F.2d 523, 527 (8th Cir. 1980).

### IV. Decision of the ALJ

The ALJ determined that Bates met the insured status requirements of the Social Security Act through March 31, 2012, but not thereafter. (Tr. 19.) The ALJ determined that Bates had not engaged in substantial gainful employment since March 29, 2011 through March 31, 2012— her date last insured. (*Id.*) The ALJ further determined that Bates had the severe impairments of "obesity; disorders of muscle, ligaments and fascia, and unspecified arthropathies of left arm; and asthma," but that no impairment or combination of impairments met or medically equaled the severity of one of the listed impairments. (Tr. 19, 21)

After considering the entire record, the ALJ determined that, through the date last insured, Bates "was limited to never climbing ropes or ladders, occasionally climb ramps or stairs, occasionally reach with non-dominant hand at waist level, and occasionally engaging in gross manipulation and fine manipulation with non-dominant hand. She could perform simple

5

routine repetitive tasks." (Tr. 21.) The ALJ further found that, through the date last insured, Bates was unable to perform any past relevant work, but that Bates could perform the requirements of a number of unskilled light occupations such as office helper, counter clerk and parking lot attendant, citing Social Security Medical-Vocational Rule 201.28, 20 C.F.R. Pt. 404, Subpt. P, App. 2. (Tr. 30.) Thus, the ALJ concluded that Bates was not disabled as defined by the Act. (Tr. 1.)

## V. Discussion

In her appeal of the Commissioner's decision, Bates argues that the ALJ erred by (1) failing to include an exertional limit in her RFC; and (2) failing to identify and resolve conflicts between the vocational expert's testimony and the Dictionary of Occupational Titles ("DOT"). (Doc. 12.)

### (1) RFC

A claimant's RFC is defined as the most an individual can do despite the combined effects of all of her credible limitations. *Moore*, 572 F.3d at 523 (citing 20 C.F.R. § 404.1545(a)(1)). The ALJ must determine a claimant's RFC based on all of the record evidence, including the claimant's testimony regarding symptoms and limitations, the claimant's medical treatment records, and the medical opinion evidence. *See Voegtlin v. Colvin*, No. 4:11CV1980 HEA, 2014 WL 651378, at *4 (E.D. Mo. Feb. 19, 2014) (citing *McCoy*, 648 F.3d at 605). It is the claimant's burden, not the Commissioner's, to prove the claimant's RFC. *See Harris v. Barnhart*, 356 F.3d 926, 930 (8th Cir. 2004); *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000).

Bates asserts that "the record provided repeated mentions of [her] difficulty with exertion," including weakness in her arm following surgery to correct an elbow injury she

6

sustained while working as a letter carrier and mail processor for the United States Postal Service, shortness of breath, decreased muscle and grip strength, and pain. (Doc. 12 at 3; Tr. 22). She notes that limitations on exertion are common for individuals like her who suffer from obesity, muscle and joint issues, and asthma (Doc. 12 at 3-4), and cites a 2012 physical medical source statement from her treating physician, Robert Poetz, D.O., F.A., C.O.F.P. Dr. Poetz opined that Bates was limited to no more than six hours of walking during an eight-hour work day, lifting 5 pounds frequently, lifting 25 pounds occasionally, carrying 10 pounds frequently, and carrying 25 pounds occasionally. (Tr. at 332-33). In addition, Bates cites a 2014 physical medical source statement from Dr. Poetz wherein he modified his opinion by limiting Bates to standing for no more than three hours during an eight-hour work day, walking no more than three hours, and no lifting or carrying with her left arm. (Tr. 336-39). Given these limitations, Bates argues her actual RFC is more restrictive than the ALJ found.

In response, the Commissioner argues that the RFC incorporates Bates's alleged exertional limitations in other ways. (Doc. 19 at 6). She asserts that restrictions on climbing ropes, ramps, and stairs, limits on reaching and stooping, and reduced use of hands and arms all serve to limit Bates's available occupations to sedentary and light exertional levels. (*Id.*) Indeed, the three occupations listed in the ALJ's determination—"Office Helper," DOT No. 239.567-010, "Counter Clerk (photofinishing)," DOT No. 249.366-010, and "Parking Lot Attendant," DOT No. 211.462-010—are all classified as light work. The Commissioner further asserts that the objective medical evidence does not support Bates's alleged exertional limitations. (*Id.* at 7-10).

Notably, much of the medical record in this case falls outside the insured period. Records and medical opinions from outside the insured period can only be used in "helping to elucidate a

7

medical condition during the time for which benefits might be awarded." *Cox v. Barnhart*, 471 F.3d 902, 907 (8th Cir. 2006) (holding that the parties must focus their attention on claimant's condition at the time she last met insured status requirements). "New evidence is required to pertain to the time period for which benefits are sought and cannot concern subsequent deterioration of a previous condition." *Moore*, 572 F.3d at 525 (citing *Jones v. Callahan*, 122 F.3d 1148, 1154 (8th Cir. 1997) (holding that claimant's non-disabling knee condition that later deteriorated into a disabling condition after the expiration of a claimant's insured status cannot be the basis for an award of disability benefits)).

Nevertheless, in this case the ALJ considered Bates's entire treatment history, including medical records subsequent to the date last insured, and determined she had the RFC to perform light work. Substantial evidence supports this determination. In particular, treatment records prior to the date last insured report normal examinations with no complaints of respiratory or cardiac problems. (Tr. 312-13, 316, 319-30). A physical examination of Bates performed on March 30, 2012, immediately prior to the date last insured of March 31, 2012, was within normal limits and showed a left arm scar status post-surgery for epicondylitis (Tr. 316). In addition, although after the date last insured, an independent medical examination was performed by Richard T. Katz, M.D. (Tr. 817-32). Dr. Katz reported that Bates "markedly over-reported her impairment" (Tr. 827). Bates asserts that obesity and muscle, ligament, and muscle and joint issues are "expected to produce exertional limitation," but she does not state that she, herself, is so affected. (Doc. 12) Likewise, she mentions that asthma can lead to shortness of breath, but she worked as a letter carrier, which requires moderate exertion, for years after she was diagnosed with asthma. DOT No. 230.367-010. A claimant's ability to work with her impairments, in the absence of any significant deterioration, demonstrates that her impairments

8

were not disabling. *See Goff v. Barnhart*, 421 F.3d 785, 792 (8th Cir. 2005); *Orrick v. Sullivan*, 966 F.2d 368, 370 (8th Cir. 1992). What is more, the 2012 medical source statement notes that she can walk for six hours in an eight hour workday and is unlimited in sitting and standing, suggesting that shortness of breath was not a concern. (Tr. 332.) As noted above, there is no record of shortness of breath or chest pain prior to the date last insured. (*See, e.g.*, Tr. 312.) In short, the relevant medical evidence supports the conclusion that Bates is not limited beyond the ALJ's RFC.

Moreover, Dr. Poetz's 2012[2] statement limiting her ability to lift and carry weight does not significantly conflict with the exertion required to perform the jobs discussed by the vocational expert or included in the ALJ's determination. (Tr. 333). Light work "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567(a)-(b). Dr. Poetz's 2012 statement notes that Bates can occasionally lift up to 25 pounds and can frequently carry ten pounds. (Tr. 333.) The statement also limits her to *lifting* ten pounds only occasionally, which Bates contends is proof that she cannot meet the exertional requirements of light work. (Doc. 12 at 4.) The Court concludes that the discrepancy is insufficient to further narrow her RFC. Put simply, Dr. Poetz's assessment that Bates can frequently carry ten pounds is substantial evidence supporting the ALJ's determination that Bates can engage in light work.

### (2) Conflicts between vocational expert testimony and DOT

Bates also argues that the ALJ failed to fulfill her obligation to identify and correct conflicts between the vocational expert's testimony and the DOT. (Doc. 12 at 6.) When a vocational expert testifies about occupational requirements, the ALJ has an affirmative

---

[2] The Court notes that the statement was signed on April 27, 2012—after the date last insured— but recognize that Bates's physician represents that the restrictions existed as early as 2008.

9

responsibility to ask about any possible conflict between that testimony and the DOT. SSR 00-4P, 2000 WL 1898704 (Dec. 4, 2000). However, the claimant "must provide some indication that the ALJ would have decided differently if the error had not occurred." *Byes v. Astrue*, 687 F.3d 913, 917 (8th Cir. 2012). Bates points to two alleged conflicts.

First, the vocational expert answered the ALJ's hypothetical question—whether someone with Bates's eventual RFC could do any other work—by opining that the person could be an office helper, counter clerk, or parking lot cashier. (Tr. 75-76.) The vocational expert testified that her opinion was "consistent with the DOT." (*Id.*) Those three occupations were eventually incorporated in the ALJ's determination. (Tr. 31.) Bates argues that the jobs discussed by the vocational expert require frequent reaching, handling, and fingering, which conflicts with the ALJ's RFC limiting Bates to only occasional reaching "with [her] non-dominant hand." (Doc 12 at 12.)

The Commissioner concedes that a conflict might exist with regard to the office helper and cashier jobs—which involve frequent reaching, handling, and fingering—but that there was no conflict with the third—counter clerk—because it only requires occasional reaching, fingering, and handling. (Doc. 19.) She cites *Latragna v. Colvin*, No. 4:14-CV-496, 2015 WL 4771630, at *18-19 (E.D. Mo. Aug. 12, 2015), for the proposition that so long as the claimant can perform one of the jobs identified by the vocational expert, the ALJ's failure to remedy an alleged conflict with other jobs is harmless. (Doc. 19 at 14.)

The Court agrees with the Commissioner. To the extent Bates's limited use of her non-dominant hand conflicts with the DOT's description of work as an office helper or cashier, it does not conflict with the occasional reaching required of a counter clerk. Accordingly, the

10

conflict was harmless and the ALJ's reliance on the vocational expert's testimony that Bates could work as a counter clerk was not in error. *Latragna*, 2015 WL 4771630, at *18.

Moreover, the Court notes that Bates's limited use of her non-dominant may not even preclude her from performing jobs that require frequent reaching, handling, and fingering. Indeed, Bates herself explains that the DOT does not contemplate one-handed limits. (Doc. 12 at 12.) That means the DOT does distinguish jobs that might require frequent reaching with only one arm. Accordingly, Bates has not shown that the limited use of her non-dominant hand expressly disqualifies her from working as an office helper or cashier because the DOT does not explain whether frequent reaching, handling, and fingering with one arm is sufficient.

Second, Bates argues that office helper and counter clerk are categorized at reasoning level two, which the DOT defines as requiring practitioners to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions," *Moore v. Astrue*, 623 F.3d 599, 604 (8th Cir. 2010), which conflicts with the hypothetical posed by the ALJ limiting the vocational expert's consideration to jobs involving "simple routine repetitive tasks" (Tr. 21). (Doc. 12 at 12.)

The Court notes that the Eighth Circuit expressly rejected this argument in *Moore*, holding that the ALJ's hypothetical question limiting the claimant to "simple, routine and repetitive work" does not conflict with jobs that require level 2 reasoning. 623 F.3d at 604. In addition, the Eighth Circuit explained that "the Level 2 reasoning definition is an upper limit across all jobs in the occupational category, not a requirement of every job within the category," meaning that the requirements of some office helper or counter clerk jobs will be less rigorous than those listed in the DOT. *Id.* Because "[t]here is nothing in the record to suggest that the vocational expert ignored the reasoning limitations in the hypothetical in determining that the

listed occupations encompassed suitable jobs," *id.*, the Court concludes that there was no conflict between the vocational expert's testimony and the DOT.

### VI. Conclusion

For the foregoing reasons, the Court finds there is substantial evidence in the record to support the ALJ's decision. Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED**, and Plaintiff's complaint is **DISMISSED with prejudice**. A separate judgment will accompany this Order.

Dated this 29th day of September, 2017.

_____
JOHN A. ROSS
UNITED STATES DISTRICT JUDGE